IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROY MAYNOR,                    )
                               )
           Plaintiff,          )   Civil No. 03 CV 1559 (SBC)
                               )
     v.                        )
                               )
UNITED STATES OF AMERICA, et al., )
                               )
           Defendants.         )
                               )

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Roy Maynor sues the United States of America and the State of North Carolina to enforce Indian rights. Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Further, North Carolina moves for a more definite statement.

### BACKGROUND

For purposes of the motion, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in Maynor's favor. *Price v. Greenspan*, No. 04-973, 2005 U.S. Dist. LEXIS 12316, *2 (D.D.C. June 22, 2005), citing *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*, citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Flynn v. Veazey Constr. Corp.*, 310 F. Supp. 2d 186, 189-90 (D.D.C. 2004). *Pro se* filings are construed liberally. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).

1

The following allegations are taken from the complaint. In 1938, Maynor's father was among 22 individuals recognized by the United States Department of Interior, Office of Indian Affairs, as an "Indian of one-half or more degree." Compl. at p. 1 and Ex. 1. In disregard of the rights accorded to the Tuscarora people by this recognition, the United States and North Carolina governments: (1) forced the "Lumbee" name on all natives regardless of their tribal affiliation in an effort to hide the Tuscarora lineage; (2) obtained and sold land that belonged to the Tuscarora people through fraudulent land leases and unratified treaties; and (3) engaged in cultural genocide and propaganda against the Tuscaroras. *Id.* at pp. 1-6. Maynor seeks: (1) the return of Tuscarora ancestral remains and artifacts held by North Carolina; (2) temporary and permanent injunctive relief prohibiting North Carolina from conducting archeological digs on Tuscarora sites; (3) the return of land set aside for the Tuscarora people or, alternatively, other suitable land; (4) declaratory relief acknowledging the right to live as Tuscarora people; (5) $500 million to rebuild the Tuscarora infrastructure; and (6) other appropriate relief. *Id.* at pp. 6-7.

## DISCUSSION

I.      Standing

"It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). Maynor bears the burden of establishing standing. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *Idaho v. Interstate Commerce Comm'n*, 35 F.3d 585, 590 (D.C. Cir. 1994). Maynor must clearly and specifically show injury in fact that is fairly traceable to the defendants' action and redressable by the relief requested. *See Whitmore*, 495 U.S. at 155; *Animal Legal Defense Fund, Inc. v. Espy*, 29 F.3d 720, 723 (D.C. Cir.

2

1994). Further, Maynor must suffer loss of a legally protected interest that is concrete, particularized and actual or imminent. *See Idrogo v. United States Army*, 18 F. Supp. 2d 25, 27 (D.D.C. 1998). The loss may not be conjectural or hypothetical. *See id.* Maynor asserts he brings his claims as a "duly elected representative of the Skaroreh Katenuaka Nation,[1] which consists of numerous individuals who are also federally recognized and who [sic] are also plaintiffs in their own right in this case." Resp. at 2. Indeed, Maynor does not seek individual relief, rather he seeks tribal relief in the form of the return of all Tuscarora remains, artifacts and land, cessation of archaeological digs on Tuscarora sites, restoration of rights to the Tuscarora people and money for the Tuscarora infrastructure.

Maynor asserts that he and certain unidentified plaintiffs have standing to sue based on the rights conferred by: (1) their status as descendants of the 22 individuals designated as Indians of one-half or more degree in 1938; and (2) the decision in *Maynor v. Morton*, 510 F.2d 1254 (D.C. Cir. 1975). Maynor's argument lacks merit. When the Office of Indian Affairs recognized 22 individuals as Indians of one-half or more degree, those specific individuals became eligible for benefits under the Indian Reorganization Act of 1934 ("IRA"), 25 U.S.C. § 461 *et seq. See* Compl. Ex. 1. The recognition, however, explicitly provided "this enrollment does not entitle you to membership in any Indian tribe, nor does it establish any tribal rights in your name. . . . [f]urthermore, this enrollment would not apply to any children you may have, unless they were born of a mother who had likewise been determined to be one-half or more Indian." *Id.* The *Maynor* decision did not affect entitlement to benefits under the IRA or determine appropriate benefits under the IRA. Rather, *Maynor* merely

---

[1] Skaroreh Katenuaka Nation is apparently another name for the Tuscarora Nation. *See* Compl. at p. 6.

3

declared that the Lumbee Act of 1956 did not intervene to preclude the 22 recognized individuals from receiving benefits under the IRA as previously determined.[2] *See Maynor*, 510 F.2d at 1259. *Maynor* did not confer any additional benefits on the 22 individuals or grant benefits to other persons. It merely affirmed the 22 individuals' status as Indians entitled to benefits conferred by the IRA.

For standing purposes, Maynor must suffer the loss of a legally protected interest that is actual or imminent, not conjectural or hypothetical. *See Idrogo v. United States Army*, 18 F. Supp. 2d 25, 27 (D.D.C. 1998). He may not assert legal rights or interests of third parties. *See Valley Forge Christian College v. Ams. United for Separation of Church and State*, 454 U.S. 464, 474 (1982) (a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"), *quoting Warth v. Seldin*, 422 U.S. 490, 499 (1975). Here, Maynor seeks tribal relief based on benefits bestowed upon ancestors. He has not alleged that he or the other unspecified plaintiffs are themselves recognized Indians who personally suffered any losses. Neither their status as ancestors of the 22 recognized Indians nor the *Maynor* decision give Maynor or the other plaintiffs any rights or relief. Indeed, the evidence Maynor submits specifically demonstrates the rights bestowed on ancestors *were not* automatically conferred on future generations. Accordingly, Maynor has not established that he, or the other plaintiffs, have any rights as Indians or have suffered any losses.

---

[2] The Lumbee Act provides that "the Indians now residing in Robeson and adjoining counties of North Carolina . . . be known as 'Lumbee Indians.'. . . [the Lumbee Indians are] not eligible for any services performed by the United States for Indians because of their status as Indians, and none of the statutes of the United States which affect Indians because of their status as Indians shall be applicable to the Lumbee Indians." Pub. L. No. 84-570, 70 Stat. 254.

4

Moreover, Maynor and the other unidentified plaintiffs lack standing to sue as a tribe. "An American Indian tribe does not exist as a legal entity unless the federal government decides that it exists." *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1273 (9th Cir. 2004). "Absent federal recognition, tribes do not enjoy the same status, rights, and privileges accorded federally recognized tribes." *See id.*; *see also* 25 C.F.R. § 83.2. "[W]hether a group constitutes a 'tribe' is a matter that is ordinarily committed to the discretion of Congress and the Executive Branch, and courts will defer to their judgment." *Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489, 1496 (D.C. Cir. 1997). The Department of the Interior has promulgated regulations establishing procedures for federal recognition of American Indian groups as Indian tribes.[3] *See James v. United States Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137 (D.C. Cir. 1987); 25 C.F.R. § 83.2 (1986). Federally recognized tribal status is required for a tribe to bring land or cultural claims. *See* 25 U.S.C. §§ 3001, 3004, 3005; *U.S. v. 43.47 Acres of Land More or Less*, 855 F. Supp. 549, 551 (D. Conn. 1994) (absent certification by the Bureau of Indian Affairs, plaintiff could not maintain action to protect tribal land rights); *Epps v. Andrus*, 611 F.2d 915, 918 (1st Cir. 1979) (groups of Indians that possess no tribal status have no standing to sue for tribal land). Maynor does not allege that the Tuscarora Nation is a federally recognized tribe. Nor does the Tuscarora Nation of North Carolina appear on the Federal Register's list of tribes entitled to receive services from the Department of the Interior.

---

[3] The regulations permit any Indian group that is not currently acknowledged by the Department of the Interior to apply for federal recognition, thereby qualifying for federal protection, services and benefits. *See James v. United States Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137 (D.C. Cir. 1987); 25 C.F.R. § 83.2 (1986). A petition for federal recognition is required as a prerequisite to acknowledgment. *Id.*; 25 C.F.R. §§ 83.5, 83.7. Upon acknowledgment, Indian tribes receive certain rights and protections, including limited sovereign immunity, powers of self-government, the right to control the lands held in trust for them by the federal government, and the right to apply for a number of federal services. *See Kahawaiolaa v. Norton*, 386 F.3d 1271, 1273 (9th Cir. 2004).

*See* 67 Fed. Reg. 46328, 46331 (July 12, 2002); *see also* 25 C.F.R. § 83.5(a); 25 U.S.C. § 479(a). Maynor's burden of establishing standing has not been satisfied. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

II.     Sovereign Immunity

Even if standing exists, the complaint must be dismissed because neither the United States nor the State of North Carolina have waived sovereign immunity.

A.     United States

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota*, 461 U.S. 273, 287 (1983); *see also Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003). The federal government is "immune from suit save as it consents to be sued," *United States v. Sherwood*, 312 U.S. 584, 586 (1941), and "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text," *Lane v. Pena*, 518 U.S. 187, 192 (1996). Maynor, the party suing the United States, bears the burden of identifying a congressional act that gives consent. *See Tri-State*, 341 F.3d at 575. The complaint does not allege a statute evincing a waiver of the United States' sovereign immunity. In his response to the motion to dismiss, Maynor cites two statutes that allegedly waive sovereign immunity, neither of which applies to his claims.

First, the Administrative Procedure Act ("APA") provides a waiver of sovereign immunity for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Maynor does not allege *any* agency action, let alone final agency action, has been taken regarding his claims. *See United Tribe of Shawnee Indians v. U.S.*, 253 F.3d 543, 549 (10th Cir. 2001). Section 702 of the APA provides a

general waiver of immunity to causes of action seeking equitable relief, however even § 702 only applies to legal wrongs allegedly committed by government agencies. *Id.* While Maynor generally asserts complaints regarding the Bureau of Indian Affairs' treatment of his father's rights under the Indian Reorganization Act, he does not specifically assert any agency action that pertains to his claims. Indeed, the complaint only refers to the United States generally: "[u]ltimately, the Federal Government is responsible for everything that has happened to date." Compl. at p. 4. Because Maynor fails to identify *any* agency action, the APA's waiver of sovereign immunity is inapplicable.

Second, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), is also inapplicable. The FTCA grants federal district courts jurisdiction over specific claims for which the United States has waived sovereign immunity. *See Richards v. United States*, 369 U.S. 1, 6 (1962). Specifically, the FTCA confers jurisdiction over claims:

> [A]gainst the United States ... for money damages ... for injury or loss of property, or personal injury or death, caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994). The FTCA only applies to torts committed by an agent or employee of the United States. *See e.g., Wells v. United States*, 851 F.2d 1471, 1474-75 (D.C. Cir. 1988); *Douffas v. Johnson*, 83 F. Supp. 644, 645 (D.D.C. 1949).

Maynor does not allege that an employee of the United States government, acting in the scope of employment, committed a negligent or wrongful act or omission that resulted in loss of property, personal injury or death. While Maynor generally raises claims involving land and Tuscarora artifacts, there are no allegations linking employees of the United States government to those losses,

7

and no allegations that the losses were due to negligence or failure to act. In his response, Maynor contends the United States has been negligent in carrying out fiduciary and administrative responsibilities that were established in *Maynor v. Morton*. Resp. at 7. As previously discussed, Maynor does not have standing to enforce *Maynor* or the rights *Maynor* declared remained intact to the 22 individuals under the IRA. Further, negligent performance of, or failure to perform, duties embodied in federal statutes and regulations only give rise to a claim under the FTCA if there are analogous duties under local tort law. *See Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985). The FTCA does not support recovery merely on the state law doctrine of negligence *per se* without a showing that similar conduct by private parties would be actionable under state law. *See e.g., Johnson v. Sawyer*, 47 F.3d 716, 728-29 (5th Cir. 1995) (en banc).

Finally, even if Maynor had a viable FTCA claim, it is likely barred by the two-year statute of limitations. *See* 28 U.S.C. § 2401(b); *Mittleman v. United States*, 104 F.3d 410, 413 (D.C. Cir. 1997). Maynor's complaint contains allegations regarding colonial and state government actions, and his father's actions in 1938 and in the 1970's. He has not established his claims arose within the two year statutory period. The FTCA waiver of sovereign immunity does not apply.[4] The burden of establishing waiver of sovereign immunity by the United States has not been satisfied.

---

[4] In a different section of his response brief, Maynor mentions the Indian Allotment Act, 28 U.S.C. § 1353. While that Act contains a narrow sovereign immunity waiver, it narrowly applies to "allotments," a term of art meaning "a selection of specific land awarded to an individual allottee from a common holding." *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 142 (1972); *Reynolds v. United States*, 174 F. 212 (8th Cir. 1909). Maynor does not raise claims involving government allotments bestowed pursuant to the Indian Allotment Act and the waiver does not apply.

B.   North Carolina

States are immune from suit absent waiver of immunity. *See Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d 1161, 1163 (D.C. Cir. 2004); *Evans v. Housing Auth. of City of Raleigh*, 602 S.E.2d 668, 670 (N.C. 2004). State sovereign immunity is constitutionally protected and a federal court is not competent to render judgment against a nonconsenting state. *See Employees of the Dep't. of Public Health and Welfare v. Dep't. of Public Health and Welfare*, 411 U.S. 279, 284 (1973); *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 939 (Fed. Cir. 1993). A state that does not consent to suit is immune from suits brought in federal courts by her own citizens. *See Bd. of Trustees v. Garrett*, 521 U.S. 356, 362 (2001); *Barbour*, 374 F.3d at 1163. The conclusion that a state has waived its immunity will not be lightly inferred, and courts indulge every reasonable presumption against the waiver of a state's Eleventh Amendment rights. *See Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999); *Barbour*, 374 F.3d at 1163. Generally, the court will find a waiver if the state voluntarily invokes the court's jurisdiction, or if the state makes a "clear declaration" that it intends to submit to the court's jurisdiction. *See id.* States enjoy sovereign immunity from suits brought by Indian tribes. *See e.g.*, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268-69 (1997).

Maynor contends the State of North Carolina waived its sovereign immunity by filing motions to dismiss and for a more definite statement. In support, Maynor primarily relies on *Clark v. Barnard*, 108 U.S. 436, 448 (1883) and *Smith v. State*, 222 S.E.2d 412 (N.C. 1976). Maynor's reliance on *Clark* is misplaced. In *Clark*, the State of Rhode Island filed a counterclaim and prosecuted its claim to the particular fund in controversy. *Id.* Accordingly, the court determined sovereign immunity was waived because the state voluntarily appeared to fully pursue its rights. The

9

*Clark* court specifically distinguished Rhode Island's appearance from that in *Georgia v. Jesup*, 106 U.S. 462 (1882), where the state did *not* waive immunity by appearing solely to protest jurisdiction and to establish sovereign immunity. *Id.* Here, the State of North Carolina does not voluntarily assert claims or submit claims for judicial determination. Rather, it appears solely to contest jurisdiction and to establish immunity.

Moreover, Maynor mistakenly contends *Smith* establishes North Carolina's waiver of sovereign immunity regarding land transactions. In *Smith*, a medical doctor sued the State of North Carolina for wrongful discharge. Because the doctor's cause of action was based on an employment contract fully authorized by the legislature, the court determined the state implicitly consented to suit for breach of contract and the doctrine of sovereign immunity was unavailable. *Id.* at 423-24. This narrow holding applies only to valid contracts entered into by the State of North Carolina. Maynor's cause of action is non-contractual. The burden of establishing waiver of sovereign immunity by the State of North Carolina has not been satisfied.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted. The State of North Carolina's motion for more definite statement is moot.

July 8, 2005

ENTER:

Suzanne B. Conlon
United States District Judge[5]

---

[5] On March 11, 2005, this case was reassigned by the Chief Justice of the United States to the Honorable Suzanne B. Conlon, District Judge for the Northern District of Illinois. *See* Dkt. No. 20.